Ricky Ray GRAHAM, Appellant,

v.

STATE of Indiana, Appellee.

No. 682S237.

Supreme Court of Indiana.

June 12, 1984.

Rehearing Denied July 27, 1984.

Steven C. Smith, Pauper Atty., Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Ricky Ray Graham was found guilty by a jury in the Madison Superior Court of class B felony voluntary manslaughter, class A felony robbery, and class D felony theft. The trial court subsequently sentenced Appellant to concurrent imprisonment terms of twenty years for voluntary manslaughter, twenty years for robbery and two years for theft. Appellant now directly appeals and raises the following four consolidated issues:

1. whether the trial court erred by denying Appellant's motion to suppress his confession;

2. whether the trial court erred by permitting the State to file a belated response to Appellant's alibi notice and to present evidence on that subject;

3. alleged denial of Appellant's right to a speedy trial; and

4. alleged improper sentencing.

The facts adduced at trial show that at approximately 9:30 p.m. on January 9, 1980, an Indiana State Policeman found the dead body of seventy-six year old Lois Graham in the kitchen of her home in Lapel, Indiana, following a call from a concerned neighbor. A carving fork was protruding from her sternum, she had been stabbed numerous times in her chest and abdomen, the phone wires at the home had been cut, the back door had been padlocked and Miss Graham's green 1953 Ford sedan was gone. Earlier that same day, a boy with an elderly woman passenger drove up to the drive-in window of the First Savings and Loan Bank in downtown Anderson in a car meeting the description of Miss Graham's automobile. The teenage boy told the teller that the elderly woman wanted to withdraw $5,000.00. The teller directed them to the bank's main office across the street. The teller never looked at the savings book presented and did not know Miss Graham or the young man. At the bank's main office, a young man accompanied by an older woman asked to withdraw $10,000.00 from the account of Lois Graham. The boy was not permitted to withdraw that amount but was allowed to withdraw $2,000.00

from Miss Graham's account. Between 11:00 and 11:15 a.m., a car meeting the same description and occupants meeting the same description as noted by people in the First Savings and Loan Bank stopped at a drive-in window of the Edgewood auto branch of the Anderson Banking Company. The elderly woman there withdrew $300.00 from Miss Lois Graham's savings account. The teller handling this transaction was shown a photographic lineup but did not select Appellant's picture. Another employee, however, selected Appellant's picture from the same lineup. The evidence further shows that Appellant went to the Indianapolis International Airport during the evening of January 9, 1980, where Miss Graham's car was recovered the following day. Appellant subsequently was arrested by local police in Moab, Utah.

On January 15, 1980, a probation officer visited Appellant in jail in Utah and encouraged Appellant to sign a consent form for his voluntary return to Kokomo where the welfare department had custody of him. Appellant signed the consent. Sergeant Jack Appleby went to Utah and returned Appellant to Anderson where Appellant was incarcerated in the Madison County Jail. While in the Madison County Jail and before being charged, Appellant confessed to committing the instant crimes.

I

Appellant first claims that the trial court erred by denying his motion to suppress his confession. During January 21 and 22, 1980, Indiana State Police Sergeant Jack Appleby interrogated Appellant and Appellant confessed that he perpetrated the fatal attack on Lois Graham. Appellant now claims that his confession was inadmissible in that it: (A) was given in violation of Ind.Code § 31–6–7–3 (Burns 1980); (B) was involuntary; (C) was the product of an illegal arrest; (D) was the product of a prior inadmissible statement; (E) was the product of an illegal detention; (F) was the product of an illegal extradition; and (G) was admitted into evidence prior to the

**4**

time when there was sufficient evidence to establish a *corpus delicti*.

(A)

Appellant claims that his confession was given in violation of Ind.Code § 31–6–7–3 in that neither he nor his father knowingly or voluntarily waived his rights since he was not afforded an opportunity for meaningful consultation with his father prior to waiver. Appellant also claims that his father, Paul Graham, Sr., was not his custodial parent or guardian and bore an adverse interest. The record shows that Officer Appleby requested Mr. Graham to be present during the interrogation since Appellant was a juvenile. Although Appellant was a legal ward of the Howard County Welfare Department at the time of the incident, he actually resided with his grandmother and father. His father therefore was a custodial parent and Appellant's contention to the contrary is without merit. Although there was evidence that Appellant's relationship with his father was often strained if not hostile, the evidence was not sufficient to show that Appellant's father had an interest adverse to Appellant. Witnesses who testified at trial about the relationship had counseled Appellant and formed their opinion by speaking only with him. Some of them had never met Mr. Graham while others had met him only casually. Officer Appleby, however, testified that he observed the conduct of both Appellant and his father prior to and during Appellant's interrogation and did not witness any hostility between them. Furthermore, Appellant never indicated to Appleby that his father was hostile to him or that he wished for someone else to accompany him.

Appellant alternatively contends that he was not afforded an opportunity for meaningful consultation with his father prior to waiving his rights under the above statute. The meaningful consultation requirement of Ind.Code § 31–6–7–3(a)(2)(C) is a safeguard for juveniles in addition to the requirement that waivers be knowingly, voluntarily and intelligently made. The

State, of course, bears the burden of proving that the consultation requirement has been satisfied. *Williams v. State*, (1982) Ind., 433 N.E.2d 769. The record here shows that on January 22, 1980, Appellant and his father met with Officer Appleby at the Madison County Jail. Before any questioning commenced, Appellant and his father read the rights waiver form and signed it. Appellant indicated that he understood the waiver document. Officer Appleby subsequently advised Appellant and Mr. Graham that he would give them the opportunity to privately discuss the matter before interrogation. After Appellant conferred with his father for a few minutes, he informed Appleby that he was ready to give a statement. An additional waiver of rights form was signed by both Appellant and Mr. Graham. Appellant requested that his statement be given outside the presence of his father and his father accordingly left the room. Appellant then gave a statement in which he fully confessed to the murder, robbery and theft. There is, therefore, sufficient evidence to indicate that Appellant was afforded the opportunity for meaningful consultation with his father as required by the above statute. *Bluitt v. State*, (1978) 269 Ind. 438, 381 N.E.2d 458.

(B)

Appellant next claims that neither he nor his father knowingly or voluntarily waived his rights. In determining whether Appellant's waiver of rights was made knowingly and voluntarily, this Court must consider the totality of the circumstances as presented by the facts. Evidence was presented that after Officer Appleby read the *Miranda* rights to Appellant and to Mr. Graham, both signed a waiver form. *See Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Moreover, Appellant indicated that he understood the waiver document. Also at the suppression hearing, Mr. O'Brien, a behavior clinician who once examined Appellant, testified that Appellant understood the English language and was capable of engaging in in-

telligent conversation. Appellant's father attended school through the seventh grade and was able to read. There was, therefore, no evidence of coercion, force or inducement on the part of the police officers. Both Appellant and his father indicated that they fully understood the rights explained to them and the waivers they signed. We now find from the totality of the circumstances that the trial court properly determined that both Appellant and his father knowingly and voluntarily waived Appellant's rights.

(C)

■ Appellant next contends that his confession should have been excluded since it allegedly was the product of an unlawful arrest. Appellant properly contends that the allegation of a crime must be supported by sufficient facts and circumstances to allow a neutral judicial officer to make an independent determination as to probable cause. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805, *reh. denied.* In the present case, a probable cause hearing was held as the result of an investigation into the murder of Lois Graham. Officer Appleby testified that he received a call from a concerned citizen who informed him that Miss Graham had not been seen for a length of time. Officer Thomas Jarvis went to the Graham residence and saw Miss Graham lying beaten and stabbed on the kitchen floor. Officer Appleby then discovered that a young man driving Miss Graham's 1953 Ford had gone to the Anderson Bank with Miss Graham on the morning of January 9, 1980, to withdraw $300.00. Tellers at the Anderson Bank described the youth as approximately 19 or 20 years old wearing a striped toboggan hat. A teller at the bank specifically identified Appellant as the youth who accompanied Miss Graham to the bank. It subsequently was determined that Appellant possessed a striped toboggan hat. In addition, the officers at the crime scene observed distinctive footprints. It was determined that Appellant possessed a pair of tennis shoes which bore the same unusual pattern on the soles. On the evening of January 9, 1980, officers recovered

Miss Graham's vehicle at the Indianapolis International Airport and discovered that Appellant had purchased an airline ticket and flown to Chicago. Officer Appleby further testified that the man who delivered milk to Miss Graham observed on the afternoon of January 9, 1980, that her vehicle was traveling in the direction of Indianapolis at a more accelerated rate of speed than he had ever before noticed. All of these facts support the trial court in its determination that probable cause existed for Appellant's arrest. Appellant's confession was not, therefore, the product of an unlawful arrest.

(D)

■ Appellant further claims that his confession should have been suppressed because it was the product of an inadmissible prior statement. The evidence shows that on January 21, 1980, Appellant, his father, Officer Appleby and Officer Robert Kowalski were present for Appellant's interrogation at the Madison County Jail. Appellant and Mr. Graham were given the *Miranda* rights and signed a waiver of rights form prior to the interrogation. Appellant then gave a partial confession to the officers. During the interrogation, Officer Appleby determined that he inadvertently had failed to permit Appellant and his father to confer privately prior to the first interrogation which he thought would make the first confession inadmissible. Officer Appleby explained this situation to Appellant and his father and again gave them their *Miranda* rights and again received from them a written waiver of rights. Appellant and his father were permitted to confer privately at that point. After doing so, Appellant informed the officer that he was ready to give his statement. Prior to the second interrogation, an additional waiver of rights form was signed by both Appellant and his father. This fact situation does not support Appellant in his contention that the second statement was inadmissible because of the circumstances surrounding the taking of the first statement. The facts clearly show that Appellant's second confession

was voluntary and independent of the first statement. The inadmissibility of the first statement does not necessarily taint the second statement and render it inadmissible unless the second statement was involuntarily given. *Johnson v. State*, (1978) 269 Ind. 370, 380 N.E.2d 1236. There was sufficient evidence to support the trial court finding that Appellant's second statement was voluntarily given and was not tainted by the prior inadmissible statement.

### (E)

Appellant further argues that his confession should have been excluded because it was the product of an illegal detention. Appellant was arrested in Utah on January 14, 1980. He voluntarily agreed to return to Indiana and was returned on January 19, 1980. In Indiana, Appellant confessed to the commission of the instant crimes and was brought before a judge on January 22, 1980. He now claims that the time between his arrest and appearance before a magistrate constitutes an unreasonable delay and therefore made his confession during this time period inadmissible. A delay in bringing a defendant before a magistrate will not render a confession inadmissible if the trial judge deems the delay reasonable and the confession voluntary. Ind.Code § 35-5-5-3 (Burns 1979) [repealed effective September 1, 1982]. Notwithstanding, it is the responsibility of the State to bring an arrestee before a neutral magistrate for a probable cause determination without undue delay. *Pawloski v. State*, (1978) 269 Ind. 350, 380 N.E.2d 1230. The State contends, however, that the delay between Appellant's arrest and his appearance before a magistrate was not unreasonable considering the distance to the nearest available Indiana judge and the administrative problems involved in returning Appellant to Indiana from Utah. We agree. We also agree that Appellant was neither illegally arrested nor illegally detained. He was lawfully arrested since there was ample evidence before the trial court to issue an arrest warrant based on probable cause that he committed the instant crimes. Appellant was not illegally detained since he was detained pursuant to the warrant.

Our inquiry further necessitates a determination of whether or not Appellant's confession was the product of his detention. This Court has written:

> "The [United States Supreme] Court noted that persons arrested illegally (or, in our case, detained illegally) may decide to confess, as an act of free will unaffected by the initial illegality. And, the determination, whether the confession is the product of free will under *Wong Sun* [*v. United States*] [ (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441], is dependent entirely on the facts of the particular cause. However, the Court went on to suggest four relevant factors: (1) whether the individual was informed of his rights as required by *Miranda*, (2) the temporal proximity of the arrest and the confession, (3) the presence of intervening circumstances, and (4) 'particularly, the purpose and flagrancy of the official misconduct.' ..."

*Williams v. State*, (1976) 264 Ind. 664, 670, 348 N.E.2d 623, 628, *on remand*, (1978) 268 Ind. 365, 375 N.E.2d 226; *See Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. In the instant case, Appellant was arrested in Utah on January 14 and returned to Indiana on January 19, 1980. On January 22, 1980, he was at least twice advised of his *Miranda* rights and each time signed waiver forms. He was taken before a magistrate on that same day. The delay between his arrest and his confession, therefore, was not such that it contributed to his confession or was unreasonable. Appellant first had to be removed from Utah and transferred back to Indiana. Care was taken to advise Appellant of his rights and to have his father present with him. Each time Appellant was advised of his rights, both he and his father signed a waiver and indicated that they understood their rights. There is no showing that the delay was purposely occasioned to elicit a confession from Appellant and Appellant does not so claim. Accordingly, there is

more than sufficient evidence to support the trial court's conclusion that Appellant's confession was not the product of an illegal detention.

### (F)

■ Appellant claims that his confession was improperly admitted into evidence since it was the product of an illegal extradition. Appellant testified that he signed a consent for his voluntary return to Indiana and voluntarily returned with police officers. He now contends that although he signed the consent, he was never informed by a judge of his rights under Ind.Code § 31–6–10–1 (Burns 1980). The trial court's jurisdiction is not affected by the manner of his return, however, even if it could be determined that the method used was improper. *Massey v. State,* (1978) 267 Ind. 504, 371 N.E.2d 703, *reh. denied.* The United States Supreme Court has determined that the power of a court to try a person for a crime is not impaired by the fact that the accused was brought within the court's jurisdiction by reason of a forcible abduction. *Frisbie v. Collins,* (1952) 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541. Appellant may not, therefore, attack his conviction on the basis that he was improperly extradited from Utah to Indiana. He is correct that he may challenge the admissibility of any evidence obtained as a result of his arrest and extradition from another state. *Massey, supra.* In the instant case, however, Appellant attempts to challenge the admissibility of his confession on the basis that he was illegally extradited from Utah to Indiana and makes no showing that his confession was a product of his alleged illegal extradition. The record shows and Appellant does not deny that he voluntarily consented to his return and was advised of his constitutional rights and signed waivers on several occasions before he gave his confession. He gives no indication that his consent or confession was induced by fear, force, or promises; he does not show his confession in any way related to the manner in which he left Utah and came to Indiana. The trial court properly rejected this argument.

### (G)

■ Finally, Appellant claims that the trial court erred by admitting his confession into evidence before there was sufficient evidence of a *corpus delicti* showing the felony of robbery. In order for a confession to be admitted at trial, corroborating evidence of the *corpus delicti* must be introduced. *Hudson v. State,* (1978) 268 Ind. 310, 375 N.E.2d 195. To establish the *corpus delicti,* independent evidence must be presented which shows that the criminal act actually took place. The *corpus delicti* at this point need not be proven beyond a reasonable doubt but may be established by circumstantial evidence. *Fleener v. State,* (1980) Ind., 412 N.E.2d 778, *reh. denied* (1981). Here, the evidence showed that Appellant and the victim went to the Anderson Bank and withdrew $300.00, went to a branch of the First Savings and Loan Bank and attempted to withdraw $5,000.00, and went to the main office of the First Savings and Loan Bank and actually withdrew $2000.00 after attempting to withdraw larger sums. Police testified that they discovered the victim's body with her purse containing $39.00 and the evidence showed that the victim was beaten and stabbed. Photographs were admitted which showed the location where the victim's body was found and the multiple stab wounds inflicted on her. There was, therefore, sufficient independent proof aside from Appellant's confession which established that the specific crime of robbery was committed by someone. The evidence sufficiently demonstrated the occurrence of a specific kind of injury. *Porter v. State,* (1979) 271 Ind. 180, 391 N.E.2d 801, *reh. denied.* The trial court therefore did not err by admitting Appellant's confession into evidence.

### II

On July 30, 1980, Appellant filed his notice of alibi pursuant to Ind.Code § 35–5–1–1 (Burns 1979) [repealed effective September 1, 1982] in which he stated that he was in Indianapolis on the date and at the

time alleged in the information. The State failed to respond to this notice. On June 15, 1981, Appellant's trial started. On June 17, Appellant requested the trial court to deny the State any opportunity to present evidence that Appellant was someplace other than the place stated in his alibi notice. The trial judge refused to grant Appellant's request but offered both parties a continuance to allow the State to respond to Appellant's notice and to allow Appellant to reply to the State's statement. Appellant refused to accept the continuance. Notwithstanding, the State filed its statement. Appellant now contends that the State unreasonably delayed filing its response to his alibi notice and therefore should have been precluded from presenting any evidence that Appellant was at a place other than that cited in his notice.

The State contends that Appellant's notice of alibi was set forth in such broad language that it did not meet the requirements of Ind.Code § 35–5–1–1. We agree. Ind.Code § 35–5–1–1 requires the alibi notice to "include specific information in regard to the exact place at which the defendant claims to have been at the time stated in the indictment or information at the time of such offense." Appellant's statement that he was in Indianapolis, Indiana, was too general and did not meet the requirements of the statute. The Court of Appeals has suggested that the alibi statute serves two purposes: (1) to protect the ability of the defendant to establish by reliable witnesses that he was somewhere else when the offense was committed by requiring the State to indicate a particular date and place it intends to prove as the date and place the offense was committed, and (2) to advise the State in advance of the exact place the accused claims to have been when the offense was committed so that the State might investigate the alibi and either dismiss the charges before trial if it is discovered that the wrong person is accused or secure evidence to prove the alibi false if such be the case. *Hampton v. State*, (1977) 172 Ind.App. 55, 359 N.E.2d 276, *Trans. denied*. The alibi notice served by Appellant satisfied neither of these pur-

poses. Furthermore, the record shows that the trial court offered Appellant a continuance to rectify the defect in his alibi notice but Appellant refused to accept the offer. This was a proper remedy for the trial judge to use and was within his judicial discretion. *Jordan v. State*, (1982) Ind., 432 N.E.2d 9, *reh. denied*. There is no error presented on this issue.

### III

Appellant also claims that the trial court erred by denying his motion for discharge alleging a denial of his early trial right pursuant to Ind.R.Crim.P. 4(B)(1). This rule provides that a defendant who moves for an early trial pursuant to its provisions "shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days period because of the congestion of the court calendar." This latter provision requires the prosecuting attorney to file a timely motion for continuance. The record shows that the information charging Appellant was filed on June 17, 1980. Appellant subsequently filed his motion for a speedy trial on February 11, 1981, and his jury trial was scheduled to commence on April 20, 1981. Appellant next filed an insanity plea on March 19, 1981. On April 10, 1981, the State filed a motion for continuance requesting that Appellant's trial be rescheduled to allow a court-appointed psychiatrist additional time to examine Appellant. The State's continuance motion was granted over objection on April 13, 1981, and on April 24, the trial court set Appellant's trial for June 15, 1981. Appellant objected to the June 15 date on April 29, but his objection was overruled on May 6, 1981. Appellant filed his motion for discharge on June 11, 1981, which was denied. Appellant's trial commenced on June 15, 1981.

When a defendant in a criminal case claims an insanity defense, it is imperative that psychiatrists be appointed to examine him. The delays in the instant case were necessarily occasioned by Appellant's insanity plea and by the resulting psychiatric examinations. Appellant therefore may not claim that his right to a speedy trial was violated for delays caused by the proceedings which he requested. *State of Indiana ex rel. Demers v. Miami Circuit Court,* (1968) 249 Ind. 616, 233 N.E.2d 777. Moreover, the trial court found the State's continuance motion reasonably based on the time required to have the court-appointed psychiatrist examine Appellant and file a report for review by the attorneys involved. The trial court found June 15 to be the next earliest opportunity to begin Appellant's trial. This Court has held that any exigent circumstance may warrant a reasonable delay in bringing a criminal defendant to trial, that the reasonableness of such delays must be judged in the context of the particular case and that the trial judge's decision will not be disturbed except for an abuse of discretion. *Loyd v. State,* (1980) 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Under the facts and circumstances of the instant case, we do not find that the trial judge abused his discretion by setting Appellant's trial for June 15. The trial court therefore properly overruled Appellant's motion for discharge based on the alleged denial of his right to a speedy trial.

IV

Finally, Appellant claims that the trial court incorrectly sentenced him on his robbery conviction. Appellant specifically claims that the jury's verdict on the robbery count was not sufficiently specific to justify the imposition of a class A felony sentence. He argues that since the verdict form returned by the jury could have applied to class C felony robbery, the jury's verdict must be understood as finding Appellant guilty of class C felony robbery instead of class A felony robbery. The verdict forms submitted to the jury on the robbery count read as follows:

"We, the jury, find the defendant not guilty of robbery"; "We, the jury, find the defendant guilty of robbery"; and "We, the jury, find the defendant not guilty of robbery by reason of insanity at the time of the offense."

The jury returned the verdict:

"We, the jury, find the defendant guilty of Robbery. s/ Wolfgang Von Buchler, Foreman."

The State now contends that the jury found Appellant guilty of Class A felony robbery since the charging information charged Appellant with class A felony robbery and the final instructions given by the trial court to the jury defined class A felony robbery. No instructions were submitted to the jury pertaining to class C felony robbery. We agree with the State. The trial judge instructed the jury by giving to them a definition of robbery and by stating: "If the State further proved, beyond a reasonable doubt, that the acts of the defendant resulted in bodily injury or serious bodily injury to any other person, you should find the defendant guilty of robbery, a class A felony." There was strong evidence showing that Appellant caused bodily harm to the victim in his perpetration of the instant robbery. Moreover, Appellant did not object to the instructions given, did not object to the verdict forms and did not tender a proposed instruction or verdict form which would have allowed the jury to render a verdict on class C felony robbery. This is not the case where the jury returned a general verdict following a trial court's final instructions setting out only the elements for a lesser included offense of the charged crime. *See Rodriguez v. State,* (1979) 179 Ind.App. 464, 385 N.E.2d 1208. The instant trial court therefore properly interpreted the verdict returned by the jury to be that of finding Appellant guilty of class A felony robbery. The trial court committed no error in sentencing Appellant.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and HUNTER, J., concur.

DeBRULER, J., dissents with opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

In this case, appellant was a juvenile at the time of his arrest, interrogation and confession. He was therefore entitled to the special protection for his constitutional rights to reject interrogation and to have counsel present, afforded by the Indiana legislature in Ind.Code § 31–6–7–3 which, in part applicable here, requires courts to reject as evidence the confessions of juveniles which are not preceded by a waiver of those constitutional rights which is made by the juvenile or his parents without having had meaningful consultation. Ind.Code § 31–6–7–3(a)(2)(C). In order to be meaningful, a consultation or genuine opportunity therefore must be timely, that is it must occur between the advisement to the two of the existence and nature of constitutional rights, and their choice to give up those rights. That choice was made twice in this case prior to the last full taped confession as evidenced by written waivers signed by father and son, and neither was preceeded by a meaningful consultation, although the prosecutor had expressly instructed the interrogator concerning that very requirement.

The first waiver was signed on January 21, 1980 at 2:35 p.m. After being advised of rights and having stated that they understood those rights, the following occurred:

Q–9–A Okay, having been read your rights, having made sure that you understand them, Ricky, I would like for you to sign your name to show that you have read those sta ... those rights, that you understand what they say.

A–9–G Should I?

A–9 That's up to you. (Mr. Graham, Sr.)

A–9–G Okay, Uh ... I just want to cover this before I sign this .. Uh, if I wish to have a lawyer anytime during here, I still can if I sign this?

A–10–A Yes sir ... It states on there that you have the right at anytime to have an attorney with you.

A–10–G Okay, I'll sign it.

Q–11–Q Mr. Graham, I will ask you to sign below his name as his father please.

A–11 Here?

The interrogation was commenced with incriminating admissions resulting. This interrogation was stopped in the middle and appellant was taken to jail. It did not resume until the next day. It was stopped because appellant was reluctant to go into the details of the killing in front of his father. After it was stopped, the interrogator spoke with the prosecutor and it was apparently decided that the process should be commenced anew the next day because of a problem with the meaningful consultation requirement.

The second waiver was made and signed the next day, January 22, 1980 at 9:30 a.m. Appellant and his father were again given an advisement of rights and the following ensued: (T.R. 1043)

Q–5 Okay sir, do you understand what it says?

A–5 Yeah.

Q–6 Okay, I would like for you if you would, to sign your name where it says sign ... Okay sir, Mr. Graham, if you will sign underneath as his father....

Okay, the time is nine-thirty five a.m. Twenty-second day of January.

Okay now Paul, yesterday after you left the room, I talked with Ricky for a little bit. And in having talked with Ricky, we felt that with your permission, if you had no objection, that we would take a statement, an interview or a statement with Ricky out of your presence, if it was agreeable with you and with Ricky. Now, I'm going to ask you, is this agreeable with you?

A–6 It's okay with me. (Mr. Graham, Sr.)

Q–7 Rick, is that agreeable with you?

A–7 Yeah.

Q–8 Okay, what I want to do now, I'm going to leave the room and if you two have any questions or anything you want to talk about before it starts, I want you to feel free to talk among yourselves. If there is any questions that you have of me then, I'll be more than happy to try to answer it for you. But I do want you two to discuss it and make sure that it's agreeable or okay with you ... okay?

A–8 Okay.

Q–9 Okay, January 22nd, the time is now nine forty-one ... a.m. Still at the Madison County Jail. Okay Rick, you've had a chance to discuss it with your father, is that right?

A–9 Yes.

Q–10 What dicision if any did you reach? Rick.

A–10 I reached that I'd just be talking to you.

Q–11 You would rather talk to me alone out of the presence of your father?

A–11 Right.

Q–12 That's agreeable with your father?

A–12 Yeah.

Q–13 Okay, Rick, I'm going to ask you once again, if you will, let's go over this thing we talked about yesterday ... about the ninth day of January in which Lois Graham was our main topic. Would you start again Rick and let's go step by step beginning the morning of ... on Wednesday of January the ninth. What did you do?

Completion of the murder confession followed this colloquy. It is apparent from the record that the private conference between father and son occurred after this second waiver was signed, and that the subject of that conference is whether the boy's preference for continuing his confession should be while alone with the interrogator or while with the father present. The issue of waiver was not then at stake.

The purpose of requiring the opportunity for meaningful consultation is to add assurance that a juvenile's waiver of Fifth and Sixth Amendment rights in the interrogation context is truly voluntary. *Garrett v. State*, (1976) 265 Ind. 63, 351 N.E.2d 30. The child must be given an opportunity to consult with his parents, guardian, or an attorney as to whether or not he wishes to waive those rights. *Lewis v. State*, (1972) 259 Ind. 431, 288 N.E.2d 138. The *Lewis* requirement has been adopted by caselaw in several states including Pennsylvania, West Virginia, and Louisiana. It has been legislatively required in several states including Colorado, Oklahoma, Texas, and Connecticut and has received consistent support from commentators. Other states have responded through their courts in the manner of the Iowa Supreme Court when, while rejecting the Indiana rule, it reflected that the failure to provide sympathetic adult support for the waiver decision of a juvenile "... will throw a deep shadow of judicial distrust over the resulting confession." *Interest of Thompson*, (Iowa 1976) 241 N.W.2d 2.

It is crystal clear from our statute and the cases cited that the consultation of the juvenile with his parent, guardian, or counsel must come after the advisement of rights are given, both so that there is assurance that the two know what is at stake in the waiver which police are attempting to get, *and* prior to the manifestation by the juvenile or his parent, guardian, or counsel to the police that a decision on the waiver question has been reached. Like the majority of the Court, I find in this record repeated advisements of rights and repeated express waivers of those rights by appellant and his father, but unlike the majority I see no evidence that any of those occasions involved a timely opportunity to discuss the waiver choice before that choice was made. A dozen of these events would not satisfy the meaningful consultation requirement of the statute. I vote to reverse the conviction and remand for a new trial at which the confessions are excluded.

PRENTICE, J., concurs.