**Esaw RANDALL, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 484S125.**

Supreme Court of Indiana.

July 16, 1986.

Melanie M. Sterba, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

A jury trial resulted in a conviction of Burglary, a Class B felony. Appellant was sentenced to twelve (12) years imprisonment.

The facts are: On the evening of February 25, 1983, Elnora Comar entered her apartment in Gary, Indiana. Upon entering she was apprehensive that some unauthorized person was in her apartment. With her .357 magnum in hand, she proceeded to check the rooms. When she entered her child's bedroom, the lights would not work. Comar discerned that someone was in the room. She fired her gun into the area behind the door. A person identified as appellant was wounded by the shot but was able to struggle with Comar. After breaking free he grabbed a bundle and fled the premises.

Comar was unable to see the face of the intruder but described him as dark-complected, heavyset and approximately three to four inches taller than her height of five foot six inches. She did observe that he was wearing a green army jacket.

When police officers arrived at the apartment, they discovered a .38 caliber revolver laying in the child's bedroom. Comar's .357 magnum was not found.

Shortly after the officers arrived at the Comar residence, another call was received by the police concerning a shooting victim a few blocks from Comar's apartment. Responding officers found appellant who stated he had been shot. At the time of his arrest appellant was not carrying a weapon, nor did he have any objects on his person taken from the Comar apartment. Comar was unable to identify the victim immediately after his arrest.

Both appellant's and Comar's bloodstained clothing were tested by a forensic serologist who determined that the blood type on each item of clothing was the same and matched appellant's blood type. Investigation of Comar's apartment showed forceful entry through a bathroom window. The bloodstains and a gun not belonging to Comar were strong evidence that a burglary had in fact occurred.

At the time of the incident, Comar observed appellant grab a bundle before he exited the apartment. Several days after the incident she reported to the police that she was unable to find some of her jewelry. It was within the province of the jury to weigh this circumstantial evidence and to determine whether or not appellant was in fact guilty as charged. *Napoli v. State* (1983), Ind., 451 N.E.2d 35.

Appellant claims there is reversible error in the record because the jury returned a verdict against him for a crime not contained in the charging information. He bases this accusation on the fact that the judge purporting to read from the written verdict stated "[w]e, the Jury, find the defendant, Esaw Randall, guilty of Robbery, Class C felony. Signed M.S. Schmidt, foreman."

The record in fact discloses that the only verdict returned by the jury read as fol-

lows: "We, the jury, find the defendant, Esaw Randall, Jr., guilty of Burglary, a Class B felony. Signed Janice Schmidt, FOREMAN."

It is obvious from this record that the trial judge had the latter written verdict before him when he purported to read therefrom and made the statement contained in the former quote. It is obvious from the record that he had no such verdict before him when he spoke to the jury, nor did any member of the jury purport to give an oral statement concerning the nature of the crime. It is obvious the judge simply misspoke when he read the written verdict of the jury. Following the erroneous reading by the judge, the jury was polled. Each juror was asked "Sir, is that your verdict?" or "Ma'am, is that your verdict?" In each instance the juror questioned answered in the affirmative.

Appellant takes the position that thus each juror returned a verdict for Robbery rather than Burglary. We cannot accept this hypothesis. The jury had deliberated and rendered a written verdict of guilty of Burglary, a Class B felony. There is no question this is what they had in mind at the time of the polling. The judge's misspoken words "Robbery, Class C felony" in place of "Burglary, a Class B felony" is an interchange of wording which should not be used by a person trained in the law but is certainly a common experience of laymen.

We often hear persons refer to the fact that their house was "robbed" while they were away or, on the other hand, that "burglars" entered the filling station on the corner and stole money from the attendant. The terms "robbery" and "burglary" are so interchangeably and erroneously used by the lay public that it is doubtful that jurors would discern the mistake apparently made by the trial judge.

What we have in this case is clearly a written verdict by a jury which is unequivocal as opposed to a spoken statement by a judge for which there was absolutely no basis. We treat the judge's error as *de minimis* and affirm the trial court.

PIVARNIK and SHEPARD, JJ., concur.

DICKSON, J., concurs in result with separate opinion.

DeBRULER, J., dissents with separate opinion.

DICKSON, Justice, concurring in result.

While I concur with the result reached by the majority, I cannot agree with the inference that the inconsistency between the spoken and the written verdict is attributable to an erroneous reading by the judge.

The verdict as read by the judge varies from the written verdict form in the record in more than one respect. The verdict as read found the defendant guilty of "robbery, a class C felony," instead of "burglary, a class B felony," as contained in the written verdict in the record. In addition, the judge read the jury foreman's signature as "M.S. Schmidt [sic]." The written verdict, however, is signed "Janice Schmidt."

These multiple inconsistencies compel serious doubts as to whether the variances resulted merely from the judge misspeaking the verdict. An explanation at least equally plausible is that the jury was inadvertently given the wrong verdict form, upon which they returned their verdict of guilty which was then read by the judge; thereafter, the discrepancy was discovered, and the jury foreman was given a corrected form of verdict to sign for the record.

Ind.Code § 35–37–2–7 grants defendant the right to have the jury polled. The jurors were polled on the verdict as read, not upon the written verdict form later inserted in the record. The discrepancy is serious, and for us to now view the matter as *de minimis*, and to sanction a retroactive *nunc pro tunc* substitution of separate offense upon which the jury was not polled, tends to jeopardize the statutory right to poll the jury.

The defendant's jury trial proceeded upon a single charge of class B burglary. The final instructions informed the jurors that he was charged with burglary, a class

B felony, by breaking and entering to commit theft. The instructions defined burglary and theft. No instructions were submitted to the jury pertaining to robbery, class C felony. There was no issue of any lesser-included offenses. The record indicates that the jury was provided with only two forms of verdict, one finding the defendant not guilty without recitation of the crime charged. The other verdict form is the one bearing the signature of the foreman finding the defendant guilty of burglary, a class B felony. This appears to be a standard verdict form for burglary, a class B felony, in which the defendant's name and the cause number was inserted by typewriter. This adds to the speculation that the trial court possessed standard verdict forms for "robbery, class C felony" which may have inadvertently been initially provided to the jury.

Where the claim is made that a defendant is sentenced for a crime inconsistent with the jury verdict, a jury's verdict may be construed by reference to the charging information and final instructions. *Graham v. State* (1984), Ind., 464 N.E.2d 1, 9.

Regardless of the preferred explanation for the inconsistencies, the fact remains that the jury was not choosing between the offenses of burglary and robbery. The two choices given them in the verdict forms were, essentially, guilty or not guilty. When the trial judge read them a verdict of guilty, and they were each asked "is that your verdict," they were merely confirming their decision to find the defendant guilty, rather than not guilty.

With the foregoing exception, I concur with the majority opinion.

DeBRULER, Justice, dissenting.

Appellant was charged by way of a single count information with class B burglary. The information did not include a class C robbery charge. Before voir dire, the trial court instructed the prospective jurors that the State had charged appellant with class B burglary. Preliminary instructions #1 and #2 instructed the jury as to the offenses of class B burglary and class C burglary. Final instructions #1, #2, #5 instructed the jury as to the offenses of class B burglary, class C burglary, and theft. The trial court did not submit to the jury any preliminary or final instructions concerning robbery. The October 12, 1983, proceedings concerning the jury's verdict are set forth here:

WHEREUPON THE FOLLOWING PROCEEDINGS WERE TRANSCRIBED BY OFFICIAL COURT REPORTER, MARIANNA GAMBINI.

BY THE COURT:

In the absence of the Court Reporter, we're recording the proceedings. If you wish to make the record, you should speak loudly enough to get on the recording machine. Jury has signaled a verdict, ready for the jury?

BY MR. HARRIS:

Yes, Judge.

BY MR. DAVIS:

Yes, your Honor.

WHEREUPON THE JURY WAS RETURNED INTO THE COURTROOM AND THE FOLLOWING PROCEEDINGS WERE HELD IN THEIR PRESENCE.

BY THE COURT:

Ladies and gentlemen of the jury, you have signaled a verdict, have you reached a verdict?

BY MRS. SCHMIDT:

Yes, your Honor, we have.

BY THE COURT:

Mrs. Schmidt, hand your verdict form to the bailiff.

*State of Indiana vs. Esaw Randall.* Verdict: We, the Jury, find the defendant, Esaw Randall, guilty of Robbery, Class C Felony.

Signed M.S. Schmidt, Foreman.

Defendant may be seated. Wish to poll the jury?

BY MR. HARRIS:

Yes, your Honor.

Q. Sir, is that your verdict:

A. Yes.

Q. Sir?

A. Yes.

Q. Ma'am?

A. Yes.

Q. Sir?

A. Yes.

Q. Ma'am?

A. Yes.

Q. Ma'am?

A. Yes.

Q. Ma'am?

A. Yes.

Q. Sir, is that your verdict?

A. Yes.

Q. Sir? Is that your verdict?

A. Yes.

Q. Sir?

A. Yes.

Q. Ma'am?

A. Yes.

Q. Ma'am, is that your verdict?

A. Yes.

BY THE COURT:

All answer in the affirmative. Anything to say to the jury before they are discharged?

BY MR. HARRIS:

No, your Honor.

BY MR. DAVIS:

No, your Honor.

BY THE COURT:

Do we have anyone not from Room 2? This concludes your service. If you will stay a few minutes in the jury room, I'll be back to give you your certificates of service and answer any questions you might have concerning your service. Please remain just for a few minutes. I'll be right back.

AT THIS POINT, THE JURY WAS DISCHARGED.

The record contains a written verdict form, finding appellant guilty of class B Burglary. The form is signed Janice Schmidt, Foreman.

### VERDICT

We, the jury, find the defendant, ESAW RANDALL, JR., guilty of Burglary, a Class B felony.

/s/ Janice Schmidt
FOREMAN

On October 27, 1983, at the sentencing hearing appellant's counsel mentioned that a jury found appellant guilty of class B burglary. Furthermore, the trial court sentenced him to twelve years on class B burglary as follows:

On conviction by the jury on the 12th of October for burglary, as a Class B felony, the defendant is now committed to the custody of the Department of Corrections ... for a period of twelve years.

Appellant argues that reversible error occurred when the jury returned a verdict of class C robbery, a charge not included in the information. The answer to the question, "what is the verdict" is dispositive of this issue. I.C. 35–37–2–2 refers to the information which is necessary for the jury to have "in giving their verdict," while I.C. 35–37–2–6 concerns inquiries to the deliberating jury as to whether they have "agreed on a verdict." I.C. 35–37–2–7 provides as follows:

When the jury has agreed upon its verdict, the officer having the jurors in his charge shall conduct them into court. If all jurors appear, their verdict must be rendered in open court. If all do not appear, the court shall discharge the jury without prejudice. The prosecuting attorney and the parties are entitled, in all criminal cases, to have the jury polled.

R.Tr. P. 48 refers to jury verdicts as being that which is "announced". In traditional manner this jury was instructed to deliberate with a view to "reaching" a verdict through the ascertainment of truth. According to Black's Law Dictionary, verdict, is a word from the Latin meaning a saying of the truth. According to these references and writings, a verdict is a conception, arrived at by the jurors. It is a conception

which must cover all the issues presented for the jury's determination and cannot be left defective in substance, and with which the judgment of the court must conform. *West v. State* (1950), 228 Ind. 431, 92 N.E.2d 852; *Clark et al v. The State* (1881), 77 Ind. 399.

A conception held by a person, like his intent or state of mind, is knowable by another through conduct, verbal or otherwise. A verdict is reached in the privacy of the jury room. It is complete in the jury room, but must be received by a judge, accepted by a judge, and a formal record made of it, before it can form the basis for a lawful conviction. Here the jury supplied two communications as to what its conception was, one in writing signed by the foreman and based upon the law applicable to the case, and a second which was verbally supplied by the affirmative declaration of each juror to the judge when polled, which is wholly contrary to the law applicable to the case.

In consideration of these two different communications received by the judge, both explicit, both showing strong indicia of reliability, no rational conclusion can be reached upon the question of which one truly reflects the conception reached by the jury in the jury room. One of the two communications clearly shows a verdict having been reached which is contrary to the law applicable to the case and could not support a judgment of conviction for burglary, a class B felony, the conviction from which this appeal has been taken.

The judgment should be reversed with instructions to conduct a new trial.