**Willie GREENWADE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 679S159.**

Supreme Court of Indiana.

Aug. 20, 1980.

I. Alexander Woloshansky, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Michael Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Willie Greenwade, was convicted of voluntary manslaughter upon a charge of murder following a trial by jury. He was sentenced to prison for twelve years.

Appellant, a sixteen year old, was convicted of shooting and killing one Eddie Lee Rendell, twenty-one years old, on a busy street in Gary, Indiana. This appeal from that conviction is based upon the claims that the trial court erroneously permitted the State to introduce in evidence his admissions contained in a written statement and that the evidence was insufficient to convict.

In *Miranda v. Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that it was constitutional error for a court to admit a written statement given during custodial interrogation without the presence of an attorney unless the State demonstrates that the defendant knowingly and intelligently waived his privilege against self-incrimination and right to retained or appointed counsel.

In *Lewis v. State* (1972) 259 Ind. 431, 288 N.E.2d 138, this Court held that a *Miranda* waiver by a juvenile would not be recog-

nized as valid by courts of this State unless the juvenile and his parent or guardian had been previously informed of the right to remain silent and of the right to counsel, and had had a meaningful opportunity to consult about whether the juvenile should waive those rights.

█ In reviewing the trial court's determination that these basic federal rights were voluntarily and intelligently relinquished and that the subsequent statement was voluntary, this Court considers the evidence which supports the decision of the trier of fact in the case of contested evidence and any uncontested evidence presented by the appellant. *Magley v. State* (1975) 263 Ind. 618, 335 N.E.2d 811.

Defense counsel unsuccessfully prosecuted a motion to suppress appellant's written admissions. At trial he again objected to their introduction. The objection was overruled and the statement admitted. Appellant contends that these rulings were erroneous because the prosecution failed to adequately show a voluntary and intelligent waiver of the right to counsel and the privilege against self-incrimination. The body of evidence developed for this purpose would indicate the following.

Appellant after having shot the victim ran from the scene and eluded the police for five days living with one friend or relative and then another. He was wanted during this period by the police for the killing. On March 21, 1978, he telephoned his mother and told her that he was at a cousin's house and wished to turn himself in. The mother called the police and two officers went to the house, located appellant, and arrested him at 1:50 p. m. on the same day. The time of these events is of some importance in resolving the issue presented. According to the testimony of the interrogating juvenile officer, appellant and appellant's mother and sister arrived at the interrogation room in the station at 2:30 p. m. Appellant testified that he was brought from the city lockup to the interrogation room, and that he had been held at that point in the lockup for an hour.

The interrogator read and explained appellant's rights to him and to his mother and sister from a standard form before asking him any questions other than his name and address. Appellant's mother then stated that he should talk first to an attorney. The interrogator called a legal aid office, but they were unable to send a lawyer. Appellant's sister then called her attorney who was unable to come, but he referred her to another attorney who did agree to come, and who in fact did arrive shortly thereafter. In the meantime appellant's sister went out and brought back some sandwiches as appellant was hungry and they were eaten. Appellant and his mother and sister conferred briefly with the lawyer, and then appellant conferred alone with the lawyer for about forty minutes. The lawyer emerged from this conference and told the interrogator that he could question appellant. Then the lawyer, pressed by other matters, left. Appellant and his mother then signed a form containing a complete advisement of rights and an explicit waiver and agreement to answer questions. Appellant and his mother also signed the written statement which appellant completed an hour and a half later.

Appellant first contends that Martinez, the interrogating officer, gave conflicting testimony with regard to who advised appellant and his mother of *Miranda* rights. It is argued that at the suppression hearing Martinez stated it was his partner and at trial Martinez stated it was he who advised the defendant. Assuming that this is a correct interpretation of the record, it is evidence that the oral advisement given precipitated the request for counsel and the subsequent extended conference with counsel. In light of the result produced by the advisement any vagueness or lack of clarity in the record as to which of the two officers actually provided the explanation of rights could not lead a court to conclude that the evidence as a whole was insufficient to support the conclusion that the *Miranda-Lewis* rule was not complied with.

█ The body of evidence stated above, standing alone, is sufficient to warrant the conclusion of the trial court that the State

satisfied its heavy burden of demonstrating a voluntary and knowing waiver of rights.

Appellant, however, relying upon our statement in *Magley v. State, supra,* that this Court must consider uncontradicted evidence of the accused in reaching its decision contends that the following additional testimony given by him was not contradicted by the State. He testified that he was taken into custody by two police officers at his cousin's house at 424 Tyler; that he was not immediately advised of his rights or taken directly to the police station, but was instead taken to an alley at 20th and Harrison Streets. There, while seated in the back seat of the police car, he was hit about the face in an effort to force him to divulge where he had discarded the murder weapon. In order to get them to stop beating him he told them the location. That location, according to his own testimony, was the alley at 20th and Harrison, the precise point on the map on which they were then sitting in the squad car. Apart from this unlikely coincidence, this part of appellant's story is also drawn in serious question when the element of time is considered. Appellant was arrested at 1:50 p. m. at his cousin's house, and transported to the police station. He was removed from the lockup to join his mother and sister at the interrogation room at 2:30 p. m. According to his own estimate he had spent as much as an hour in the lockup. Even assuming that estimate of time is exaggerated, any appreciable stay by appellant in the lockup after his arrival at the police station would reduce the time from his arrest to his arrival at the police station to only a few minutes, a period insufficient for the events involving the transportation to the alley location, the beating, and an unsuccessful on-foot search for the gun up and down the alley to have transpired.

Furthermore, the improbability of the truth of appellant's story regarding the beating is further buttressed to a degree by the evidence at the suppression hearing which clearly establishes that appellant was in a cooperative state of mind when he permitted himself to be taken into the police station by the officers. Appellant's story portrays him as being in a resistive or furtive state of mind. In short, appellant's testimony in this respect is internally conflicting and is contradicted by other evidence on an inferential plane. Upon due consideration of it for the purposes of applying the constitutional test of admissibility, we find the total body of evidence is sufficient to support the conclusion reached by the trial court beyond a reasonable doubt. The trial court did not err in admitting the statement.

At the trial the State was under the obligation to prove that the victim Rendell died of gunshot wounds inflicted by appellant. Appellant contends that the State failed in this burden. In resolving this question we look to the evidence and reasonable inferences therefrom which support the verdict, and this conviction will be affirmed if from that viewpoint there is evidence from which a reasonable trier of fact could infer beyond a reasonable doubt that the death of the victim occurred as the result of gunshot wounds inflicted by appellant. *Taylor v. State* (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State* (1970) 253 Ind. 536, 255 N.E.2d 657.

Appellant correctly points out that there was no expert opinion presented to the jury on the cause of death. There was, however, testimony from the Chief Investigator for the Lake County Coroner that he was called to Mercy Hospital in Gary, arrived there at 11:55 on March 16, and examined the body of the victim Rendell. He observed two gunshot wounds one to the left side of the abdomen and another in the back of the neck. The body was that of a young male. There were abrasions to the knees and lacerations on the penis. Photographs of the body were introduced into evidence showing these wounds. There were white discs attached to the body in the chest region which were described by the witness as part of the medical team's life saving equipment which had been placed there to accommodate electrodes.

In his statement appellant admits that after 10:15 p. m. on March 16 he shot

Rendell in the stomach at point blank range while they were fighting, and that he then shot him again somewhere in the back. The testimony of the investigator, the photographs, and appellant's own statement provided a sufficient basis for the trier of fact to infer to a certainty beyond a reasonable doubt that the victim died of gunshot wounds inflicted by appellant. The law prefers but does not demand direct expert medical testimony in support of the cause of death in a homicide prosecution. *Hall v. State* (1978) Ind., 378 N.E.2d 823; *Hudson v. State* (1976) 265 Ind. 302, 354 N.E.2d 164; *Chatman v. State* (1975) 263 Ind. 531, 334 N.E.2d 673; *Covington v. State* (1975) 262 Ind. 636, 322 N.E.2d 705; *Sexton v. State* (1974) 262 Ind. 554, 319 N.E.2d 829; *Johnson v. State* (1957) 236 Ind. 509, 141 N.E.2d 444.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.