Jerome WILLIAMS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 781S189.

Supreme Court of Indiana.

April 13, 1982.

Hugh G. Baker, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Jerome Williams, was convicted by the court of attempted murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.); Ind.Code § 35–41–5–1 (Burns 1979 Repl.).

He was sentenced to a period of twenty years in the Indiana Department of Correction. In his direct appeal, he presented the following issues for our review:

1. Whether the trial court erred when it permitted the state to introduce evidence seized via a juvenile waiver of rights form;

2. Whether the trial court erred when it allowed a witness to testify concerning the photographs utilized during a pretrial photographic identification display; and

3. Whether the evidence is sufficient to support the conclusion of the court.

The record reveals that in the early morning hours of September 25, 1980, a man entered the office of the Skyline Motel at 6617 East Washington Street in Indianapolis and requested a room from desk clerk William Vos. According to Vos, he informed the man there were no vacancies at the inn; Vos testified the man then produced a handgun concealed on his person and pointed it at him. As Vos reached for a handgun located beneath the office counter, the perpetrator told him, "Don't try it." Simultaneously, an exchange of gunfire ensued between the men. Vos, who was injured in the exchange, testified his assailant grabbed his chest after the shots were fired, "lurched" toward the doorway, and fled the premises.

Indianapolis police were summoned to the scene, where Vos described his assailant as a black male approximately twenty-three years of age, roughly five feet, eight inches in height. Vos indicated the man was clean shaven, wore short hair, and had been clothed in a green surgical shirt. Vos also indicated he believed he had shot his assailant.

The information was dispatched to area hospitals with the admonition that hospital personnel notify police in the event a man matching the description arrived seeking care. Shortly thereafter Indianapolis Police Officer Michael Taylor, who had investigated the shooting, received notification that a man matching the description had arrived at Community Hospital in Indianapolis. Taylor proceeded to the hospital, where he

located the suspect lying in an emergency room. The injured man was the defendant; a bloodstained green surgical shirt lying nearby had been removed from him by hospital personnel.

Taylor also encountered defendant's half-brother, Keith Billingsley, in the emergency room area. Like defendant, Billingsley was wearing a green surgical shirt; he stated he had driven defendant to the hospital. Questioning of Billingsley and the subsequent police investigation culminated in defendant's arrest and conviction for the crime at issue.

## I.

Defendant's half-brother, Billingsley, who was seventeen years of age, was arrested at the hospital and transported to the juvenile branch of police headquarters. There, in the presence of his father, he was questioned about the events which had transpired. He explained he had been asleep at the apartment he shared with defendant when a knock on the window woke him. Billingsley arose and went to the window, where defendant informed him he had shot himself with the handgun the two kept on the premises. Billingsley informed police that defendant had requested he place the gun under a sofa cushion and drive him to the hospital. With his father present, a juvenile waiver of rights form was read to Billingsley; both he and his father then signed the document. Armed with the waiver of rights form, the police proceeded to the apartment where they seized the handgun, which contained four bullets and one spent shell casing.

At trial, the state was permitted to introduce the handgun, bullets, and shell casing over defendant's objection. Here, defendant reasserts his contention the exhibits were improperly admitted. He argues Billingsley lacked the authority to consent to the search of the apartment; in addition, he maintains the waiver was invalid in that it was not exacted in conformity with the requirements of Ind.Code § 31–6–7–3 (Burns 1980 Repl.).

■ Defendant's contention that Billingsley lacked authority to consent to a search of the premises is based on evidence which indicates Billingsley enjoyed dual domiciles. The record indicates Billingsley's living arrangements were divided between his grandmother's home and the apartment shared with defendant. Although Billingsley testified he resided at his grandmother's home, he also conceded for two months prior to September 25, 1980, he had kept his clothing at the apartment, slept there "all the time," and paid one-half the rent for each of the two months. Via this interest in and usage of the premises, Billingsley's authority to consent to a search of the apartment's common areas, where the gun was found, was coterminous to that of defendant. *United States v. Richardson*, (7th Cir. 1977) 562 F.2d 476; *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042.

■ Concomitantly, defendant asserts Billingsley, as a juvenile, was not capable of comprehending the consequences of a search. The broad supposition that status as a juvenile *ipso facto* precludes a knowing and intelligent waiver is without merit in light of Ind.Code § 31–6–7–3, *supra*, as well as case authority. *See, e.g., In re Gault*, (1967) 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; *Lewis v. State*, (1972) 259 Ind. 431, 288 N.E.2d 138. As the statute and case authority reveal, a juvenile is capable of waiving constitutional rights, although special care is demanded to insure the propriety of the waiver. *Id.*

■ Defendant maintains the requirements of Ind.Code § 31–6–7–3, *supra*, which define the ingredients of a valid juvenile waiver, were not satisfied. Specifically, he argues that although his father was present when Billingsley's rights were explained, the waiver was invalid because Billingsley was not afforded an opportunity for "meaningful consultation" with his father prior to waiving his rights, as expressly required by Ind.Code § 31–6–7–3(a)(2)(C). Defendant's standing to challenge the propriety of Billingsley's waiver arises by virtue of the fact the seizure which resulted

therefrom occurred within the common area of premises in which defendant had a possessory interest and reasonable expectation of privacy. *Brames v. State,* (1980) Ind., 406 N.E.2d 252; *Burton v. State,* (1973) 260 Ind. 94, 292 N.E.2d 790. *Cf., Deckard v. State,* (1981) Ind.App., 425 N.E.2d 256 (defendant's conviction reversed where trial court admitted evidence seized pursuant to improperly executed waiver of rights by juvenile temporarily residing with defendant).

Ind.Code § 31–6–7–3(a)(2), upon which defendant relies, reads:

"(a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:

\* \* \* \* \* \*

"(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

"(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver."

The "meaningful consultation" requirement of subsection (a)(2)(C), as first recognized in *Lewis v. State,* (1972) 259 Ind. 431, 288 N.E.2d 138, is a matter peculiar to juvenile waivers; it is a safeguard *additional* to those requirements common to adult waivers—that they be knowingly, voluntarily, and intelligently made. *Fortson v. State,* (1979) Ind., 385 N.E.2d 429; *Lewis v. State, supra.* With the passage of Ind.Code § 31–6–7–3, *supra,* effective October 1, 1979, the legislature codified our decision in *Lewis.* In subsection "d" of the statute, the legislature recognized the independent nature of the "meaningful consultation" requirement, where it delineated the factors which bear on the question whether a waiv-

er has been knowingly, intelligently, and voluntarily made. Included as a factor therein was "the length of time" a juvenile "was held in custody before consulting with his parent, guardian, or custodian," language predicated on the presumption the required consultation would occur. Ind. Code § 31–6–7–3(d)(4), *supra.*

At the same time, the legislature engrafted a provision to our decision in *Lewis* whereby a juvenile may potentially waive the statutory right to "meaningful consultation." Subsection "b" of Ind.Code § 31–6–7–3, *supra,* reads:

"(b) The child may waive his right to meaningful consultation under subdivision (a)(2)(C) if he is informed of that right, if his waiver is made in the presence of his custodial parent, guardian, custodian, guardian ad litem, or attorney, and if the waiver is made knowingly and voluntarily."

The "meaningful consultation" requirement consequently may be satisfied by either actual consultation of a meaningful nature or by the express opportunity for such consultation, which is then foresaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights.

█ The state bears the "heavy burden" of proving the requirement of meaningful consultation or that the opportunity therefor has been satisfied. *Greenwade v. State,* (1980) Ind., 408 N.E.2d 542, 544; *Fortson v. State, supra; Garrett v. State,* (1976) 265 Ind. 63, 351 N.E.2d 30. Here, the state relies on *Bluitt v. State,* (1978) 269 Ind. 438, 381 N.E.2d 458, to support its argument that it sustained its burden of proof.

In *Bluitt,* this Court concluded the requirement of meaningful consultation as defined in *Lewis* was satisfied by an interrogation process which lacked any indication of police intimidation or coercion and was characterized by an overriding atmosphere of fundamental fairness.[1] Our con-

---

1. Defendant has not argued and we need not decide whether Ind.Code § 31–6–7–3, *supra,* which took effect subsequent to our decision in *Bluitt,* preempts our determination that a lack

of meaningful consultation or opportunity therefor does not render the waiver of rights invalid *per se.* See, *Deckard v. State, supra;*

clusion was based on extensive evidence, ranging from police unwillingness to discuss the crime with the juveniles in the absence of their parents to a "spirit of cooperation" which prevailed between the police and parents. *Id.*, 269 Ind. at 443–7, 381 N.E.2d at 462–4.

■ Here, however, the record reveals a paucity of evidence regarding the interrogation and execution of the waiver of rights. The record reveals the juvenile Billingsley was detained and arrested at Community Hospital at approximately 5:30 a. m., and taken to the juvenile branch of police headquarters. At 10:30 a. m., he was questioned in the presence of his father by two police officers for approximately one hour. Police Officer Clifford Adams, who participated in the questioning, testified Billingsley was "informed of his rights as a juvenile" and, together with his father, executed a standard "consent to search" form. Explained on the form was the fact Billingsley could refuse to consent to a search and require that a warrant be obtained; the form also included the stipulation that it was signed "of my own [Billingsley's] free will without any threats or promises having been made." The following day, the charges against Billingsley were dropped and he was released.

This testimony represents *in toto* the evidence introduced by the state to satisfy its burden of proof. It falls far short of the extensive evidence produced in *Bluitt*; there is no evidence to indicate the atmosphere surrounding the questioning of Billingsley, who was under arrest, was free of the inherently coercive nature normally present in custodial surroundings. Nor, as the state tacitly concedes, is there evidence that any consultation occurred between Billingsley and his father or that Billingsley was specifically informed of that right and waived it in the presence of his father.

Compliance with the dictates of Ind.Code § 31–6–7–3(a), *supra*, serves to safeguard the rights of juveniles, a matter which demands special caution. *In re Gault, supra; Lewis v. State, supra.* Here, there is no

Ind.Code § 31–6–7–3 (Kiefer, *Commentary*)

evidence to indicate that Billingsley was afforded any opportunity for meaningful consultation with his father, as required by the statute. Consequently, the handgun, bullets, and shell casings seized pursuant to the waiver were improperly admitted. *Hall v. State,* (1976) 264 Ind. 448, 346 N.E.2d 584; *Lewis v. State, supra; Deckard v. State, supra.*

■ Nonetheless, as the state has argued, we conclude the error was harmless beyond a reasonable doubt. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The record reveals the victim Vos identified defendant immediately and without hesitation from a photographic display exhibited to him at the hospital; likewise, Vos identified defendant at trial without equivocation. The description Vos provided to police immediately after the shooting accurately described defendant's physical characteristics; defendant's arrival at the hospital clothed in a green surgical shirt and suffering a gunshot wound meshed with Vos's version of the events. This evidence points unerringly to defendant's guilt; it cannot be said the erroneous admission of the handgun, bullets, and shell casing had such significant impact that a new trial is warranted. Victim Vos's testimony regarding the shooting was buttressed by the admission of photographs of his wounds.

In the face of this evidence, including the victim's two identifications of defendant as the perpetrator, we are unable to conclude the court would have reached a different conclusion had the handgun and bullets not been admitted. *Chapman v. California, supra; Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233; *Clark v. State,* (1980) Ind. App., 400 N.E.2d 172. We find no reversible error.

## II.

■ Defendant next asserts the trial court erred when it permitted Indianapolis Police Detective Clifford Adams to testify

(West 1979).

as to similarities in the subjects of photographs displayed to victim Vos in the pretrial photographic identification process. His argument is predicated on the basis of the "best evidence" rule, as the record reveals:

Q. "And were these photographs all of black, males?"

A. "Yes, sir."

Q. "And were they all of similar facial characteristics?"

A. "They were all similar."

MR. HAWKINS [Defense Counsel]: "Objection, Judge. The photographs themselves would be the best evidence."

THE COURT: "He can describe them though so the objection will be overruled."

A. "Yes, this was a mixture of photographs. They weren't all exactly alike. Some had more hair, some had less hair. They were all black, males, all in about the same age group."

In his brief, defendant argues Adams's testimony improperly indicated to the jury victim Vos's pretrial photograph identification was wholly reliable.

We note the appropriate objection at trial would have been that a witness should not be permitted "to make comparisons and to give opinions where the jurors are as well qualified to form an opinion upon the facts as the witness." *Green v. State*, (1981) Ind., 422 N.E.2d 1190, 1193; *Reburn v. State*, (1981) Ind., 421 N.E.2d 604. The constitutionality of the pretrial identification procedures was not at issue; it consequently cannot be said the state was required to introduce the photographs employed. Defendant's argument the photographs should have been required as the "best evidence" is therefore without merit, regardless of whether the evidentiary rule was applicable to the circumstances at hand. *See Pinkerton v. State*, (1972) 258 Ind. 610, 283 N.E.2d 376; 29 Am.Jur.2d, *Evidence* § 543 (1972). The record reveals defendant made no effort to avail himself of the opportunity to place the photographs into evidence or to cross-examine Adams; either means was available to attack Adams's testimony and

remedy the harm argued on appeal. We find no error here.

### III.

Defendant maintains the evidence was not sufficient to support the court's conclusion he intended to murder Vos. He supports his contention by arguing the evidence reveals Vos fired the first shot in the confrontation; in addition, he relies on the fact Vos was struck by birdshot as proof of his lack of intent to murder the victim.

■ It was well settled when this Court is confronted with a challenge to the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. Rather, we examine only the evidence favorable to the fact-finder's conclusion, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion, it will not be disturbed. *Schultz v. State*, (1981) Ind., 422 N.E.2d 1176; *Moon v. State*, (1981) Ind., 419 N.E.2d 740.

■ The record does not unequivocally indicate, as defendant asserts, that Vos fired first in the exchange. The record instead indicates that when Vos reached for his handgun, defendant warned him, "Don't try it." Vos simply was unable to identify the source of the first shot, according to his testimony. Similarly, defendant maintains Detective Adams testified birdshot was nonlethal; the record indicates, however, that Adams merely testified birdshot was less likely to cause a fatal wound than ordinary bullets.

■ The intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Zickefoose v. State*, (1979) Ind., 388 N.E.2d 507; *Jackson v. State*, (1978) 267 Ind. 501, 371 N.E.2d 698. The elements necessary to an attempt to commit a crime include (1) acting with the required culpability, and (2) engaging in conduct which constitutes a substantial step toward commission of the crime. Ind.Code § 35–41–5–1, *supra; Zickefoose v. State, supra.*

Based on the above testimony, as well as evidence heretofore recited, it cannot be said the court necessarily erred in concluding defendant's actions constituted a substantial step toward the commission of murder and that he acted with the requisite intent. *Id.*

For all the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.