Andrew **CHERRONE**, Jr., Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 71S00–9904–CR–265.

Supreme Court of Indiana.

March 31, 2000.

Edward C. Hilgendorf, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Barbara Gasper Hines, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON DIRECT APPEAL

BOEHM, Justice.

Andrew Cherrone, Jr. was convicted of the murder and attempted robbery of Howard Shultz. He was sentenced to consecutive terms of sixty-five years imprisonment for murder and fifty years for attempted robbery. In this direct appeal he contends: (1) the trial court should have suppressed his confession to police because he was denied the right to consult with his father during the interrogation; (2) there is insufficient evidence to support his conviction for attempted robbery; and (3) his 115–year sentence is manifestly unreasonable. We affirm the convictions but re-

mand to the trial court with instructions to impose concurrent sentences.

**Factual and Procedural Background**

On the evening of May 24, 1998, Cherrone, sixteen, was drinking alcohol with his friends Roy McCarthy, fourteen, and Justin Maike, fifteen. His thirteen-year-old girlfriend Margaret Deskovich was also present but not drinking. Late that evening the group went to a convenience store to get something to eat, but had no money. Cherrone told Maike, "[W]e should go rob Mr. Shultz," a ninety-year-old man who lived nearby. Cherrone then said he was not serious, but he and Maike walked to Shultz's house. Deskovich and McCarthy remained at the convenience store.

Cherrone and Maike found lights on at Shultz's house and knocked on the door. When Shultz answered the knock, Cherrone asked if he could use the telephone. Shultz retrieved a cordless phone and handed it to Cherrone, who pretended to call someone. Because Maike's face was covered by his shirt, Shultz asked if Maike was a boy or a girl. Maike then showed his face to Shultz. After a few seconds of silence, Cherrone "jumped in the door" at Shultz and began beating him with the cordless phone. Maike screamed at Cherrone to stop and then ran back to the convenience store. Cherrone ultimately stabbed Shultz in the neck with a pen. Shultz died as the result of "cranial blunt trauma ... to the head and brain cavity as well as a stab wound to the neck."

Cherrone then went with the others to Deskovich's house where he told Maike and McCarthy to burn his clothes. En route he discarded Shultz's cordless phone. Cherrone told Maike and McCarthy not to tell anyone about the crime "because if he went to prison, his family would get [them]." While Maike and McCarthy were burning the clothes, Cherrone told Deskovich that he had beaten Shultz over the head with the phone and stabbed him in the neck with a pen. Nearly three weeks later, Cherrone confessed to police.

Cherrone was charged with murder, attempted robbery as a Class A felony, and felony murder. A jury found him guilty of all three counts, and the trial court entered judgment of conviction only for murder and attempted robbery. Cherrone was sentenced to maximum consecutive terms totaling 115 years imprisonment.

**I. Admissibility of Juvenile Confession**

Cherrone first contends that the trial court erred in admitting his videotaped confession. Cherrone filed a motion to suppress the confession, which the trial court denied after a hearing. Indiana Code § 31–32–5–1 sets forth specific requirements necessary for a valid waiver of state or federal constitutional rights in cases involving a juvenile. The statute provides in relevant part that these rights may be waived only:

(2) by the child's custodial parent ... if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

Ind.Code § 31–32–5–1 (1998). We review a trial court's ruling as to the voluntariness of a waiver by looking to the totality of the circumstances, considering only the evidence favorable to the State and any uncontested evidence. *Carter v. State,* 686 N.E.2d 1254, 1257 (Ind.1997). Indiana Code § 31–32–5–4 provides that a review of the totality of the circumstances in juvenile cases is to include consideration of the child's physical, mental, and emotional maturity; whether the child or parent understood the consequences of the child's statements; whether the child and parent had been informed of the delinquent act; the length of time the child was held in custody before consulting with his parent; whether there was any coercion, force, or inducement; and whether the child and

parent were advised of the child's right to remain silent and to the appointment of counsel.

A detective met Cherrone at the Juvenile Probation Office and Cherrone remained with the detective voluntarily for approximately an hour, during which the police unsuccessfully attempted to locate his mother and then telephoned his father and waited for his father to arrive at the police station. After Cherrone's father arrived at the police station, Cherrone conversed with him for about fifteen minutes before the interview with police began. Before initiating questioning, police advised both Cherrone and his father that they wanted to discuss Cherrone's knowledge of Shultz's murder. Police also read aloud and Cherrone and his father signed a waiver of rights form that explained the right to remain silent, the right to talk to a lawyer before and during questioning, the right to the appointment of an attorney at no expense, and the right to stop questioning at any time. The waiver also advised Cherrone that anything he told the police could be used against him in court. After the waiver was signed, the detective asked and received permission to speak to Cherrone outside his father's presence. After approximately thirty minutes of questioning, Cherrone confessed to the murder.

## A. *Meaningful Consultation*

■ Cherrone relies primarily on the statutory requirement that a juvenile's rights may be waived by his or her parents only after "meaningful consultation" between the parent and juvenile. Ind.Code § 31–32–5–1(2)(C). Specifically, he points to the following exchange between Officer Reihl and Cherrone's father after the waiver of rights form was explained and signed.

Reihl: Would you mind if I talked to him privately now or ... ?

Cherrone, Sr.: Sure.

Reihl: Would that be okay?

Cherrone, Sr.: Yeah.

Cherrone's father then left the room, and Officer Reihl proceeded to question Cherrone while his father waited outside. Cherrone contends by denying him "the opportunity to meaningfully consult with his father post-advisement and post-waiver his rights were violated and the confession was rendered inadmissible." Cherrone cites *Foster v. State,* 633 N.E.2d 337 (Ind. Ct.App.1994), in support of this contention. As the Court of Appeals observed in *Foster* :

The "meaningful consultation" requirement of the statute is "a matter peculiar to juvenile waivers; it is a safeguard *additional* to those requirements common to adult waivers—that they be knowingly, voluntarily, and intelligently made." The meaningful consultation requirement may be satisfied by "actual consultation of a meaningful nature or by the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights." The State bears the "heavy burden" of proving that the meaningful consultation requirement has been met.

*Id.* at 347 (quoting *Williams v. State,* 433 N.E.2d 769, 772 (Ind.1982)) (internal citations omitted) (emphasis in *Williams* ). In *Foster,* the detective orally advised the juvenile and his parents of his rights and then informed the parents that they were entitled to a conference. *See* 633 N.E.2d at 348. After a forty-five minute conference, the detective repeated the rights advisement and secured a written waiver signed by both parents and the juvenile. *See id.* Although it appears that Foster's parents remained with him throughout the subsequent interview, the Court of Appeals' opinion in *Foster* in no way suggests that their presence was required. Rather, the court observed that the waiver was executed after a forty-five minute family consultation. "Thus, Foster was not only afforded an opportunity for a meaningful

consultation, an actual consultation transpired." *Id.*

 Indiana Code § 31–32–5–1 imposes requirements before a juvenile and his or her parent may affirmatively waive Miranda rights. Specifically, subsection 2(C) requires a "meaningful consultation" before any rights may be waived. We do not agree with Cherrone's contention that it requires a consultation after that waiver.[1]

### B. *Totality of the Circumstances*

 The totality of the circumstances surrounding Cherrone's interview with police also support the trial court's conclusion that Cherrone's waiver was voluntary. Cherrone was sixteen years old at the time of the confession and he points to nothing to suggest that his physical, mental, or emotional maturity was any less than the average sixteen year old. He was voluntarily with police for only an hour while waiting for his father to arrive. His father was then present for a fifteen-minute conversation after being advised of the nature of the investigation and before the rights were explained to and waived by Cherrone and his father. Finally, the police did not use any coercion, force, or inducement to secure the waiver from either Cherrone or his father. In sum, all six statutory factors support the trial court's conclusion that Cherrone's waiver of rights was voluntary. The videotaped confession was therefore properly admitted into evidence.[2]

## II. Sufficiency of Evidence for Attempted Robbery

Cherrone argues that there is insufficient evidence to support his conviction for attempted robbery. Specifically, he contends that there is insufficient evidence to prove that he had the requisite intent to rob Shultz when he entered Shultz's home. When reviewing the sufficiency of evidence to establish the elements of a crime—including the intent element—we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. *Heavrin v. State*, 675 N.E.2d 1075, 1079 (Ind.1996). We do not reweigh evidence or judge the credibility of witnesses and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

1. Cherrone also makes a somewhat oblique suggestion that he was not given the opportunity to have a meaningful consultation with his father after they were advised of his rights but before waiver. Cherrone did not argue in the trial court that a consultation is "meaningful" only if it follows the advisement of rights. It is well settled that a party cannot raise one ground in the trial court and a different ground on appeal. *See Wurster v. State*, 715 N.E.2d 341, 347 (Ind.1999). As explained above, the consultation between Cherrone and his father occurred upon his father's arrival at the police station—before the detective explained the rights Cherrone and his father would be waiving. It appears that the usual, and in our view the better, practice as described in *Foster* and more recent cases that have come before this Court, *see, e.g., Trowbridge v. State*, 717 N.E.2d 138, 148 (Ind.1999); *Carter v. State*, 686 N.E.2d 1254, 1258 (Ind.1997), is to provide the consultation after advising the juvenile and his or her parents of the rights to be waived. In *Graham v. State*, 464 N.E.2d 1 (Ind.1984), Justice DeBruler joined by Justice Prentice in dissent expressed the view that the statute requires that the consultation occur after the advisement of rights "so that there is assurance that the [parent and juvenile] know what is at stake in the waiver which police are attempting to get...." *Id.* at 11 (DeBruler, J., dissenting). We need not decide whether Justice DeBruler's view that the statute requires the consultation occur after the advisement but before the waiver of rights is correct, because that issue was neither presented to the trial court nor cogently argued on appeal. Nor, for the same reason, do we address whether the other evidence in the case would render harmless any error in the admission of the confession.

2. Cherrone also points out that the videotape contained a sixteen-minute conversation between him and his father that occurred after Cherrone was arrested. He contends that this segment "was inadmissible and improperly published to the jury." Because Cherrone did not object to this segment at trial, any claim of error is waived. *See Angleton v. State*, 686 N.E.2d 803, 814 (Ind.1997).

*Garrett v. State,* 714 N.E.2d 618, 621 (Ind. 1999); *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997).

■ Deskovich testified that on the evening of the murder she, Cherrone, McCarthy, and Maike went to a convenience store near Shultz's house because they were hungry. However, they had no money. At the convenience store Maike heard Cherrone say, "[W]e should go rob Mr. Schultz." Maike did not respond, and the two young men then started walking toward Shultz's house. Maike testified that, upon their arrival at Shultz's house, Cherrone asked if he could use the phone. Shultz retrieved a cordless phone, which he handed to Cherrone who remained at the door. Cherrone pretended to dial the phone and then, after a brief pause, "jumped in the door" at Shultz and started beating him over the head with the phone. This evidence is sufficient to support a reasonable inference that Cherrone intended to rob Shultz and took a substantial step toward the commission of that crime.

### III. Sentencing

■ As a final point, Cherrone contends that the imposition of consecutive maximum sentences of sixty-five years for murder and fifty years for attempted robbery is manifestly unreasonable.[3] Although this Court has the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B).

■ The trial court's sentencing statement found aggravating and mitigating circumstances relating both to the nature of the offense and the character of the offender. The trial court observed that Cherrone knew that the victim was ninety years-old, frail, and lived alone. The victim was "brutally beaten and then was stabbed in the neck with a ballpoint pen and left to die." The trial court found these circumstances of the crime to be a matter of "severe aggravation." As regards the character of the offender, the trial court observed that Cherrone was on probation for underage consumption of alcohol at the time of this offense but also found that Cherrone had suffered a difficult childhood and may have been under the influence of alcohol on the night of the offense. Although not expressly finding it to be a mitigating circumstance, the trial court also mentioned Cherrone's youthful age of sixteen.

We agree with the trial court's view of the severe and disturbing nature of the offense. Nonetheless, we view the imposition of maximum and consecutive sentences for this sixteen-year-old offender who lacked a significant history of criminal activity as manifestly unreasonable. Accordingly, we remand this case to the trial court with direction to impose concurrent sentences. *Cf. Brown v. State,* 720 N.E.2d 1157, 1159–60 (Ind.1999) (remanding for imposition of concurrent sentences for a sixteen-year-old offender); *Carter v. State,*

---

**3.** Cherrone's argument focuses on the alleged improper balancing of the aggravating and mitigating circumstances. He suggests, but fails to make a cogent argument to support, error in the trial court's articulation of aggravating and mitigating circumstances in its sentencing statement. For example, Cherrone makes the following passing reference to mitigating circumstances: "The record indicates that Cherrone was sorry for his indiscretion, was responding to probation, and had been the victim of his grandfather earlier in life." An allegation that the trial court failed to identify or find a mitigating circumstance requires a defendant to establish that the miti-

gating evidence is both significant and clearly supported by the record. *Carter v. State,* 711 N.E.2d 835, 838 (Ind.1999). Cherrone cites only the Presentence Report in support of these contentions. The Presentence Report does not mention any remorse for the killing, which is plainly not a mere "indiscretion." Moreover, the fact that Cherrone committed the instant offenses while on probation contradicts his assertion that he was responding to probation. Finally, the trial court expressly found that Cherrone had "had some very hard things in [his] life from what I read in the pre-sentence report...." This presumably addressed the abuse by his grandfather.

711 N.E.2d 835, 843 (Ind.1999) (finding maximum sentence for a fourteen-year-old offender manifestly unreasonable).

## Conclusion

Cherrone's convictions are affirmed. This case is remanded to the trial court with instructions to impose concurrent sentences.

SHEPARD, C.J., and SULLIVAN and RUCKER, JJ., concur.

DICKSON, J., concurs as to Parts I and II, dissents as to Part III, and would affirm the trial court.