901 N.E.2d 539 (2009)
R.W., a Child Alleged to be a Delinquent Child, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 31A05-0803-JV-161.
Court of Appeals of Indiana.
February 19, 2009.
*540 John T. Evans, Corydon, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
NAJAM, Judge.

STATEMENT OF THE CASE
R.W. appeals from his adjudication as a delinquent child for committing Public Intoxication, a Class B misdemeanor when committed by an adult. He presents two issues for our review, but we address only the following dispositive issue: whether the trial court provided R.W. a meaningful opportunity to consult with his mother regarding the waiver of his right to counsel during his initial hearing.
We reverse.

FACTS AND PROCEDURAL HISTORY
On September 7, 2007, students at Lanesville High School in Harrison County reported to school officials that R.W. smelled of alcohol. School officials removed R.W. from class, R.W. admitted he had been drinking, and the school officials informed the police. A deputy from the Harrison County Sheriff's Department arrived, took R.W. into custody, and measured R.W.'s blood alcohol content to be 0.06%.
On September 14, the State filed a petition alleging R.W. to be a delinquent, namely, that he had committed public intoxication, a Class B misdemeanor when committed by an adult. On September 17, the trial court held an initial hearing, which R.W. attended with his mother. At that hearing, the following exchange took place:
THE COURT: Okay. So you're [R.W.'s mother] here representing his interest as well. Okay. You [R.W.] have certain rights in Court. One, the right to a copy of the charges and there's two of them there. In one of them you're charged with minor consuming, a status offense and a delinquent act alleging that on or about the seventh day of September 2007, in Harrison County, [R.W.] did before becoming eighteen years of age, violate Indiana Code 7.1-5-7 concerning minors and alcohol, specifically [R.W.] tested .06 percent on a portable breath test . . . and that's a status offense because if the person had been an adult that is twenty-one years of age it would not have been an offense. And under [the cause number ending in] JD-108, the petition alleging delinquency is *541 identical in the first few paragraphs but then it goes into paragraph five and it says that you, alleges that you committed an act defined under Indiana Code, XX-XX-X-X, that would have been a crime if committed by an adult[,] that is public intoxication[,] a Class [B] misdemeanor in that at the same time and place you did then and there, you were then and there found in an unlawful state of intoxication caused by your use of alcohol or a controlled substance and you were in a public place[,] specifically Lanesville High School in Harrison County.
[R.W.]: Yes, ma'am.
THE COURT: Do you understand the nature of those charges?
[R.W.]: Yes, ma'am.
THE COURT: Okay. And under JS-104, there is a sixth paragraph, the possible penalties have to do with what can happen to you if you either admit or are found, been found to have committed the offenses. And that's when it talks about removing you from the home, placing you in a secure detention facility or Indiana Boys' School or placing you and your family in treatment facilities. You can be required to surrender your driver's license, you can be required to pay restitution. You can be partially or completely emancipated. You can be required to attend [an] alcohol and drug services program. You could be required to perform community services. You could be, supervision over you could be placed with the probation department and you could be required to attend out[-]patient treatment at a social service agency, psychological, psychiatric[,] medical or education facility from an individual practitioner. These are among the many things that can be done to you. Do you understand this[?]
[R.W.]: Yes, ma'am.
THE COURT: And do you understand this as well, his mother?
[MOTHER]: Yes.
THE COURT: You have certain rights in the proceeding besides knowing what the charges are and what the possible penalties are. You have the right to be represented by an attorney. And you have a right for the Court to appoint an attorney if you do not have the means or your parents do not have the means to appoint one. What do you wish to do about an attorney? Do you wish to have an attorney at this time?
[R.W.]: No, ma'am.
THE COURT: Do you then wish to waive your right to an attorney?
[R.W.] Yes, ma'am.
THE COURT: A child cannot waive the right to an attorney unless a parent agrees with that waiver. . . .
[MOTHER]: I agree.
THE COURT: So, is it your intention, [R.W.'s mother]?
[MOTHER]: Yes.
THE COURT: To join your son in agreeing to waive your right to an attorney?
[MOTHER]: Yes.
THE COURT: Okay. You have other rights that I have outlined[][s]everal times ahead of you today, did you hear them?
[R.W.]: Yes, ma'am.
THE COURT: And you know the nature of the charges, and [to] be represented by an attorney, to have a speedy trial for the Court, confront and cross examine the witnesses, to require witnesses to come in and testify on your behalf, the right to remain silent. You don't have to say anything against yourself and the right to require the State to prove that you committed the delinquent act beyond a reasonable doubt, either *542 before you are adjudicated to be a status offender or adjudicated to be a delinquent. You understand all of that?
[R.W.]: Yes, ma'am.
THE COURT: All right. Now what do you wish to do about the offense. Do you either wish to admit or deny the offense?
[R.W.]: I admit that I had been drinking, ma'am.
THE COURT: Okay. You understand that if you admit the allegations of the status offense or the petition alleging delinquency that you're giving up all those rights that I just went over with you[?]
[R.W.]: Yes, ma'am.
THE COURT: Is that your intention to give up all those rights and take responsibility for your actions?
[R.W.]: Yes, ma'am.
THE COURT: Okay. Has anyone forced you to do this?
[R.W.]: No, ma'am. I felt like I was under peer pressure but I wouldn't really say that it was peer pressure. I guess just wanting to look cool or somewhat.
THE COURT: Has anyone offered you any leniency or special treatment to get you to come in here and admit these acts?
[R.W.]: No, ma'am.
THE COURT: Do you feel that this admission is your own free will?
[R.W.]: Yes, ma'am.
THE COURT: And [R.W.'s mother,] do you feel like he's doing this on his own or have you made him do this?
[MOTHER]: He admitted on his own.
THE COURT: Okay. Do you still want to admit the allegations?
[R.W.]: Yes, ma'am.
Transcript at 8-15. The court then adjudicated R.W. a delinquent, ordered the State to prepare a predisposition report, and scheduled a disposition hearing. The court also informed R.W. and his mother that they could "make [their] own recommendation at that time too." Id. at 23.
On December 17, 2007, the court held the disposition hearing. At the same time, the court heard a number of other petitions pending against R.W. In at least one of those other petitions, R.W. was represented by counsel. However, the trial court expressly informed R.W.'s counsel that he was "not appointed" to address the public intoxication charge, Id. at 37. The court also reiterated that R.W. had waived his right to counsel at the initial hearing, and the court did not inquire with R.W. to determine whether R.W. wished to waive his right to counsel for the disposition hearing. The State then recommended that R.W. be made a ward of the Department of Correction. R.W. and R.W.'s mother recommended that he be released to his home. And R.W.'s probation officer gave the court no recommendation. See id. at 44-45, 47-48, 52. The trial court accepted the State's recommendation and entered its disposition order accordingly. Neither the parties nor the court referenced or inquired into the predisposition report, which, apparently, had not been prepared as ordered.[1]
On January 15, 2008, R.W., by counsel, filed a motion to correct error with the trial court. In that motion, R.W. asserted that the trial court erred in its disposition order for each of the following reasons: (1) *543 R.W. was denied his right to counsel; and (2) the court did not receive or consider the predisposition report before the court entered its disposition order. After a hearing, the trial court denied R.W.'s motion. This appeal ensued.

DISCUSSION AND DECISION
R.W. asserts that the trial court improperly denied him his right to counsel at his initial hearing. As this court recently stated in the context of adult prosecutions:
A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. Gideon v. Wainwright, 372 U.S. 335, 344-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Implicit in the right to counsel is the right to self-representation. Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because a criminal defendant gives up many benefits when the right to counsel is waived, "the accused must `knowingly and intelligently' forgo those relinquished benefits." Id. at 835, 95 S.Ct. 2525 (quoting Johnson v. Zerbst 304 U.S. 458, 464-65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Furthermore, when a defendant asserts his or her right to self-representation, the trial court should advise the defendant of the "dangers and disadvantages of self-representation." Id.

Our Supreme Court has stated that there are no specific "talking points" when advising a defendant of the dangers and disadvantages of proceeding without counsel, and that a trial court needs only to come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to counsel. Poynter v. State, 749 N.E.2d 1122, 1126 (Ind.2001). Furthermore, when making its determination, the trial court should be mindful that "the law indulges every reasonable presumption against a waiver of this fundamental right." Id.

Our Supreme Court has adopted four factors to consider when determining whether a knowing and intelligent waiver occurred:
"(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se."

Id. at 1127-28 (quoting United States v. Hoskins, 243 F.3d 407, 410 (7th Cir. 2001)). The trial court is in the best position to assess whether the defendant has made a knowing and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." Id. at 1128 (citations omitted). Nevertheless, the trial court's conclusion whether the defendant knowingly and voluntarily waived the right to counsel is reviewed de novo. Miller v. State, 789 N.E.2d 32, 37 (Ind.Ct.App.2003) (citing Balfour v. State, 779 N.E.2d 1211, 1216 (Ind.Ct. App.2002)).
Drake v. State, 895 N.E.2d 389, 392-93 (Ind.Ct.App.2008).
In the context of juvenile adjudications, however, the State bears a heightened burden in securing the juvenile's waiver of his or her right to counsel. As provided by Indiana Code Section 31-32-5-1:
Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

*544 * * *
(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
(A) that person knowingly and voluntarily waives the right;
(B) that person has no interest adverse to the child;
(C) meaningful consultation has occurred between that person and the child; and
(D) the child knowingly and voluntarily joins with the waiver. . . .
(Emphasis added.) Our Supreme Court has held that "[t]he meaningful consultation requirement of the statute is a matter peculiar to juvenile waivers; it is a safeguard additional to those requirements common to adult waiversthat they be knowingly, voluntarily, and intelligently made." Cherrone v. State, 726 N.E.2d 251, 254 (Ind.2000) (emphasis original; quotations omitted).
Further:
The meaningful consultation requirement will be met when the State demonstrates "actual consultation of a meaningful nature or . . . the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights." Williams v. State, 433 N.E.2d 769, 772 (Ind.1982). See also Patton v. State, 588 N.E.2d 494, 496 (Ind.1992) ("The consultation requirement is designed to afford the juvenile a stabilizing and comparatively relaxed atmosphere in which to make a serious decision that could affect the rest of his life."), reh'g denied.

Brown v. State, 751 N.E.2d 664, 670 (Ind. 2001) (omission original). "The preferred practice is to provide consultation after advising the juvenile and his or her parents of the rights to be waived." Borton v. State, 759 N.E.2d 641, 646 (Ind.Ct.App. 2001) (citing Cherrone, 726 N.E.2d at 257 n. 1), trans. denied. "The State bears the heavy burden of proving that the meaningful consultation requirement has been met." Cherrone, 726 N.E.2d at 254 (quotations omitted). However, we review the evidence in the light most favorable to the trial court's decision. Brown, 751 N.E.2d at 670.
R.W. contends that he was denied his right to counsel at the initial hearing because he was not given an opportunity to meaningfully consult with his mother about waiving that right. The State responds by identifying the portions of the record, quoted at length above, in which the trial court informed R.W. of the allegations against him and their possible penalties and in which R.W. and his mother repeatedly stated that R.W. did not want counsel. Despite that commentary, however, we must agree with R.W.
If R.W. were an adult, we would be inclined to agree with the State that R.W. knowingly and voluntarily waived his right to counsel. But that is not the case. R.W. is a juvenile, and the State must additionally demonstrate that he was given the opportunity to meaningfully consult with his mother before R.W. could waive his constitutional rights. See I.C. § 31-32-5-1; Cherrone, 726 N.E.2d at 254. The record is devoid of any evidence that the trial court provided R.W. with an opportunity to meaningfully consult with his mother about the waiver of his right to counsel before R.W. stated his desire to waive that right. Accepting the State's argument on appeal would nullify the distinction between the requirements for a juvenile's waiver of his or her fundamental rights and the requirements for an adult's waiver of those rights.
*545 The State cannot demonstrate either that R.W. actually consulted with his mother or was given the express opportunity for that consultation before informing the court that he did not want counsel. Again:
The meaningful consultation requirement will be met when the State demonstrates "actual consultation of a meaningful nature or . . . the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights."
Brown, 751 N.E.2d at 670 (quoting Williams, 433 N.E.2d at 772). In other cases, either an express, but declined, opportunity to consult or anywhere between fifteen and forty-five minutes of actual consulting time between parent and child has been held to be sufficient to satisfy the meaningful consultation requirement. See, e.g., Brown, 751 N.E.2d at 670 ("The police gave Defendant's father fifteen to [twenty] minutes to consult with his son. . . . Under these facts, we hold that Defendant received a meaningful opportunity to consult with his father."); Cherrone, 726 N.E.2d at 254 ("the waiver was executed after a forty-five minute family consultation."); see also Trowbridge v. State, 717 N.E.2d 138, 147-48 (Ind.1999) ("Trowbridge and Frost were given two opportunities for meaningful consultation. They declined the first offer and later chose not to consult when left alone in the interrogation room expressly for that purpose."); Carter v. State, 686 N.E.2d 1254, 1258 (Ind.1997) ("They were given an opportunity to consult privately with each other immediately after the rights were read. They declined the opportunity to consult."). Those circumstances did not occur here.
There is no evidence in the record to demonstrate that R.W. was given any opportunity to consult with his mother. Accordingly, the State has not met its "heavy burden" to demonstrate that R.W. satisfactorily waived his right to counsel. Cherrone, 726 N.E.2d at 254. Therefore, R.W.'s subsequent confession to the allegations against him at the initial hearing were not given in accordance with Indiana Code Section 31-32-5-1, and we must reverse his adjudication.[2]
Reversed.
BAKER, C.J., and KIRSCH, J., concur.
NOTES
[1] The predisposition report was filed with the trial court on April 2, 2008, more than three months after the court entered its disposition order. In that report, R.W.'s probation officer recommended that R.W. "remain on task at the Alternative School and that he remain in the Wyandotte House." Appellant's App. at 71-72.
[2] R.W. also asserts that he was denied the right to counsel at the disposition hearing because the trial court did not renew his supposed waiver. Given our conclusion that R.W. did not waive his right to counsel at the initial hearing in accordance with Indiana Code Section 31-32-5-1, we need not reach this issue. However, we note that "[a] juvenile is entitled to assistance of counsel at every stage of the juvenile proceedings, including the disposition hearing," and that "[t]he record must show either that the juvenile was represented by counsel or that the juvenile waived representation." D.H. v. State, 688 N.E.2d 221, 223-24 (Ind.Ct.App. 1997) (citing Bridges v. State, 260 Ind. 651, 299 N.E.2d 616, 617 (1973); Adams v. State, 411 N.E.2d 160, 162 (Ind.Ct.App. 1980)).