**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jul 13 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEVONTE ROGERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1111-CR-1015 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1010-FB-77220

July 13, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Devonte Rogers appeals his convictions of Class B felony criminal deviate conduct[1] and two counts of Class D felony criminal confinement.[2] Rogers argues the trial court abused its discretion by admitting his statement to police because he did not knowingly, intelligently, and voluntarily waive his rights to have a parent present, to meaningfully consult with the parent, and to parental consent. We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 6, 2010, Devonte Rogers, who was seventeen years old, knocked on the apartment door of T.S., his twenty-seven-year-old married neighbor. Rogers was a friend of T.S.'s husband, Steve, who worked for the apartment complex in which the three lived. Rogers asked if Steve was home, and T.S. informed Rogers that Steve was somewhere else on the property. Rogers left, but then he returned a while later to ask the same question. Steve was still absent, but this time Rogers asked T.S. if he could come inside to use the restroom. T.S. let Rogers inside her apartment. After using the restroom, Rogers stayed in the apartment and sat in T.S.'s living room.

Rogers informed T.S. that Steve had been having an affair. Rogers then moved over next to T.S., who was sitting on a couch. Rogers placed his hand on hers and told her that she should be with him, suggesting she should cheat on her husband with him out of revenge. Rogers began to pull down T.S.'s pants, and he lifted her shirt and placed his mouth on her breast. T.S. resisted and stood up to walk out of the door. Rogers grabbed her, lifted her up,

---

[1] Ind. Code § 35-42-4-2.
[2] Ind. Code § 35-42-3-3.

and put her on the bed in the bedroom. Rogers managed to pull down T.S.'s pants, pinned her to the bed and inserted his finger into her vagina. T.S cried out, and Rogers left the apartment. T.S. called her husband and then the police.

Detective Laura Smith took Rogers and his mother to the police station for interrogation. Detective Smith read Rogers's rights as a juvenile to Rogers and his mother. He was told he had the right to have a parent present, to meaningfully consult with his parent, and to have his parent consent to the interview. Detective Smith left Rogers and his mother alone to confer and, on returning, read them the rest of the juvenile rights form. Rogers's mother signed the juvenile waiver of rights form. Detective Smith then asked Rogers if he had read the form enumerating his rights and if he had any questions. Rogers said he did not have any questions[3] and he proceeded to speak with Detective Smith about the incident.

Prior to trial, Rogers moved to suppress the statement he gave to Detective Smith on the ground it was not knowingly or voluntarily made. The motion was denied.

## DISCUSSION AND DECISION

We review a ruling as to the voluntariness of a waiver by looking to the totality of the circumstances, considering only the evidence favorable to the judgment and any uncontested evidence. *Carter v. State,* 686 N.E.2d 1254, 1257 (Ind. 1997). A review of the totality of the circumstances in a juvenile case includes consideration of the child's physical, mental, and

---

[3] The transcript of Rogers's statement to police shows only one response to Detective Smith's two part question; Q. DID YOU READ THIS ALONG WITH YOUR MOM? DID YOU HAVE ANY QUESTIONS ABOUT ANY OF THIS? A. NO, MA'AM. (Tr. at 252.) However, a review of the video that the jury watched indicates Rogers acknowledged Detective Smith's first question and responded affirmatively.

3

emotional maturity; whether the child or parent understood the consequences of the child's statements; whether the child and parent had been informed of the delinquent act; the length of time the child was held in custody before consulting with his parent; whether there was any coercion, force, or inducement; and whether the child and parent were advised of the child's right to remain silent and to the appointment of counsel. *Cherrone v. State*, 726 N.E.2d 251, 253-54 (Ind. 2000).

A juvenile is capable of waiving constitutional rights, although special care is demanded to ensure the propriety of the waiver. *Williams v. State*, 433 N.E.2d 769, 771 (Ind. 1982)... As a result, an assessment of the validity of a juvenile's waiver requires two separate voluntariness analyses -- the voluntariness of the juvenile's waiver and the voluntariness of the parent's waiver. *D.M. v. State*, 949 N.E.2d 327, 339 (Ind. 2011).

Rogers challenges the voluntariness of only his own waiver. We hold the totality of the circumstances surrounding Rogers's waiver and police interrogation supports the trial court's determination that Rogers knowingly, intelligently, and voluntarily waived his rights.

In denying Rogers's motion to suppress, the trial court noted:

> I do find Detective Smith has met the requirements necessary to proceed with the interrogation of her interview with Mr. Rogers or Mr. Grady[4] at the time. I believe in support of that, that her -- she testified that she did read the rights to both Mr. Rogers and his mother prior to exiting the interview room, which I think is critical – the critical indication that the Defendant had been advised of his juvenile rights. The meaningful consultation, I don't believe is in dispute. I think that was allowed. And after having been read those rights, I think that meaningful consultation period would have allowed the discussion, if they so chose, a discussion about those rights and whether or not they would proceed

---

[4] "Mr. Grady" is Rogers. At the time of the arrest, Rogers used the last name of Grady, which is his father's last name.

4

with the interview. The question on page 3 of the statement, the one answer to two questions, I think should have been clarified by Detective Smith and should have been reviewed more thoroughly, but I don't think there was any indication that he was – he did not understand, Devonte Rogers did not understand the advisement of rights and what was going on. So I believe the voluntary – the burden of the State to meet the voluntariness requirement of the waiver has been met.

(Tr. at 267-68) (footnote added).

Rogers notes he did not sign the waiver of his rights that his mother signed. Rogers also claims the transcript of the interview with Detective Smith shows he did not understand his rights. Rogers points to his ambiguous singular response to a two-part question from Detective Smith about his rights, and the fact he did not sign his waiver of rights, as evidence he did not knowingly and voluntarily waive his rights.

An express oral or written statement is not required to establish a knowing and voluntary waiver. *Berghius v. Thompkins*, 130 S. Ct. 2250, 2255 (2010), *reh'g denied*. A valid implied waiver occurs where a suspect advised of his or her constitutional rights has acknowledged an understanding of those rights and makes an un-coerced statement without taking advantage of them. *Id.*

Rogers and his mother were both present when Detective Smith informed them of Rogers's constitutional and juvenile rights. The officer told them his rights and handed them a juvenile waiver form that listed Rogers's rights. After informing Rogers and his mother of his rights, Detective Smith let them have twenty-six minutes alone to consult with one another. Detective Smith then had Rogers's mother sign the juvenile waiver of rights form while Rogers was present. Detective Smith asked Rogers directly if he read the form along

5

with his mother and if he had any questions.  Detective Smith testified that she believed Rogers response was that he read his rights and did not have any questions.[5]  Rogers continued to participate in the interrogation after these questions; at no point did he ask to stop, nor did he invoke any of his constitutional rights.

At the time of the interrogation at issue, Rogers was seventeen years old and had several interactions with the juvenile justice system.  Those facts also support finding he knew about and understood the rights he was waiving.  *See Parker v. State*, 754 N.E.2d 614, 617 (Ind. Ct. App. 2001) (minor's age and experience with the judicial system was considered in determining if the minor knowingly and voluntarily waived his rights).  Based on the totality of the circumstances and the evidence favorable to the ruling, the trial court was within its discretion to find that Rogers knowingly and voluntarily waived his rights.

## CONCLUSION

We affirm the trial court's decision to admit Rogers's statement to police because the totality of the circumstances demonstrates Rogers knowingly and voluntarily waived his rights.

Affirmed

FRIEDLANDER, J., and BARNES, J., concur.

---

[5] Moreover, as indicated in note 4, supra, our review of the video revealed Rogers responded affirmatively.